**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CARL SCAGGS, and** | ) | |
| **NELLIE SCAGGS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.** |
| | ) | |
| **3M COMPANY, AS SUCCESSOR BY** | ) | |
| **MERGER TO MINNESOTA MINING** | ) | |
| **& MANUFACTURING COMPANY** | ) | |
| **AND/OR ITS PREDECESSORS/** | ) | |
| **SUCCESSORS IN INTEREST** | ) | |
|     **Serve:** Registered Agent | ) | |
|           CT Corporation System | ) | |
|           120 South Central Avenue | ) | |
|           Clayton, MO 63105 | ) | |
| and | ) | |
| | ) | |
| **MINE SAFETY APPLIANCES** | ) | |
|     **Serve:** Registered Agent | ) | |
|           CT Corporation System | ) | |
|           120 South Central Avenue | ) | |
|           Clayton, MO  63105 | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Come now Plaintiffs Carl Scaggs (hereinafter "Plaintiff"), and Nellie Scaggs, (hereinafter "Nellie Scaggs"), for their respective causes of action against Defendants, allege and state as follows:

**PARTIES**

1.    Plaintiffs are now and at all times hereinafter mentioned were residents and citizens of the State of Missouri.

2.　　At all relevant times hereinafter mentioned Plaintiff was employed by ISP Minerals, Inc. or its predecessor in interest, and primarily performed his job duties on the premises of his employer in Annapolis, Missouri.

3.　　Plaintiff's job duties involved working in areas containing silica dust.

4.　　Defendant 3M Company (hereinafter "3M") is a Delaware Corporation with its principal place of business in Minnesota.

5.　　3M is the successor in interest to Minnesota Mining and Manufacturing Company and is responsible for any liability for its own conduct and that of Minnesota Mining and Manufacturing.

6.　　Defendant, Mine Safety Appliances is a Pennsylvania corporation with its principle place of business in Pennsylvania.

7.　　At all times herein, Mine Safety Appliances was doing business in Missouri and can be served with process by sending a copy of the summons and complaint to its registered agent at the following address:  CT Corporation, 120 South Central Avenue, Clayton, MO 63105.

8.　　At all times herein, 3M was doing business in Missouri and can be served with process by sending a copy of the summons and complaint to its registered agent at the following address: CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

## JURISDICTION AND VENUE

9.　　3M and Mine Safety Appliances are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds $75,000.

10.     3M and Mine Safety Appliances is subject to personal jurisdiction of this Court by virtue of the fact that 3M and Mine Safety Appliances did and/or does business in the state of Missouri and committed torts in whole or in part in this State against Plaintiff, in this judicial district, as more fully set forth herein.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  The events that give rise to this claim occurred in Iron County, Missouri which is in the judicial district for the United States District Court for the Eastern District of Missouri.

### FACTS COMMON TO ALL COUNTS

12.     Plaintiff was employed by ISP Minerals, Inc. from 1966 until 2004.

13.     During the course of his employment, Plaintiff was continuously exposed to silica dust.

14.     3M is the designer, manufacturer, distributor and seller of the respirators, namely the 3M 8710 and the 3M 8715 used by Plaintiff throughout the duration of his employment at ISP Mineral Inc.   Mine Safety Appliances was the designer and manufacturer of the Dustfoe respirator also used by Plaintiff in the early party of his work career at ISP Minerals, Inc.

15.     During the course of his employment, Plaintiff utilized respirators manufactured, designed, distributed, sold, and recommended by 3M.

16.     The respirators that Plaintiff utilized were specifically known under the product names or identifications as follows:  3M 8710 and the 3M 8715, and the Mine Safety Appliances Dustfoe respirator.

17.     The respirators utilized by Plaintiff failed to perform properly which caused or contributed to cause Plaintiff to develop silica dust induced airway obstruction.

18.     At all times during his exposure to silica dust, Plaintiff was unaware that 3M or Mine Safety Appliances' respirators would fail and that this failure would cause Plaintiff serious adverse health conditions.

19.     3M and Mine Safety Appliances knew, or should have known, that ordinary use of its product would not adequately protect users including Plaintiff, from serious harm and, therefore, 3M and Mine Safety Appliances is liable for Plaintiff's bodily harm.

20.     Therefore, under the aforesaid facts, Plaintiff is entitled to recovery against 3M and Mine Safety Appliances under various legal theories, including product liability, breach of warranty, and negligence.

## PLAINTIFF'S DAMAGES

21.     Plaintiff has suffered the following damages and personal injury for which he now seeks redress:

(a)     Plaintiff Carl Scaggs has suffered, now suffers and will continue to suffer great pain of body and anguish of mind throughout his lifetime;

(b)     Plaintiff Carl Scaggs has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and Plaintiff will continue to incur such expenses in the future due to treatment necessary to prolong his life;

(c)     Plaintiff Carl Scaggs has suffered, now suffers and will continue to suffer physical and mental anguish in the future due to the disabling character of silicosis;

(d)     Plaintiff Carl Scaggs has suffered, now suffers and will continue to suffer impairment in the future due to silicosis;

(e)     Plaintiff Carl Scaggs suffers and will continue to suffer permanent disabilities and will be permanently disabled in the future due to the disabling character of silicosis;

(f)     Plaintiff Carl Scaggs has suffered loss of earnings and will continue to suffer loss of earnings and wages throughout the remainder of his work life expectancy due to the disabling effects of silicosis;

(g)     Prior to the onset of his symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities.  Due to the disabling effects of silica related occupational lung disease, Plaintiff has been and will be prevented from participating in said activities, which were normal to him prior to developing silica dust induced airway obstruction.  Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

(h)     Plaintiff Carl Scaggs has suffered, now suffers and will continue to suffer from a shortened life expectancy and the mental anguish thereby caused due to the terminal nature of silicosis;

(i)     Plaintiff Carl Scaggs has suffered, now suffers and will continue to suffer from shortness of breath, extensive coughing and wheezing, severe impairment and limitation of lung functions, chest pain and pain in his entire body.  Further, Plaintiff has suffered, now suffers and will continue to suffer from mental anguish as a direct and proximate result of the aforesaid condition of silicosis.

(j)     Plaintiff also seeks and is entitled to recover punitive and exemplary damages.

## COUNT I
## PRODUCT LIABILITY – 3M COMPANY

Comes now Plaintiff, Carl Scaggs, and for Count I of his Complaint against Defendant alleges:

22.     Plaintiff hereby restates and realleges each and every allegation contained in paragraphs one through twenty and every sub paragraph therein as though they are fully set forth herein.

23.     At all material times, 3M was engaged in the business of manufacturing, distributing, supplying and/or marketing respirators intended to protect users of those respirators, including Plaintiff, from silica dust.

24.     3M's respirators were used by Plaintiff in order to protect Plaintiff from inhalation of silica dust.

25.     3M's respirators failed to protect Plaintiff from inhaling silica dust thereby directly causing or contributing to cause Plaintiff damage in that he contracted silica dust induced airway obstruction through the inhalation of respirable silica.

26.     The 3M respirators were in a defective condition and unreasonably dangerous for use in the expectable environment of use of said respirators when placed in the stream of commerce by 3M.   Said defective, unreasonably dangerous condition caused or was a contributing cause of the injuries and damages which are the basis of this suit.

27.     3M is liable to Plaintiff because as designer, manufacturer, distributor, and/or seller of its products in a defective, unreasonably dangerous condition, 3M owed Plaintiff a strict duty not to cause harm through the use of 3M's defective and unreasonably dangerous products.

28.     Further, 3M sold and placed in the stream of commerce defective and unreasonably dangerous respirators which were not safe for their reasonably anticipated use when 3M:

(a)     knew, or with the exercise of reasonable care should have known, that its respirators would not protect against silica dust, and, therefore, the respirators were in a defective, unreasonably dangerous condition;

(b)     failed to warn and/or adequately warn Plaintiff of such dangers that were posed by 3M's defective and unreasonably dangerous respirators;

(c)     knew or it was reasonably foreseeable, that 3M's respirators would be used by users or consumers such as Plaintiff, in the manner in which 3M's respirators were used by Plaintiff;

(d)     failed to instruct Plaintiff in the proper use of 3M's respirators to protect Plaintiff from harm, if, in truth, there was a way that the 3M respirators could protect Plaintiff from such harm;

(e)     knew, or with the exercise of reasonable care should have known, that 3M's respirators were designed in a manner where the respirators did not properly fit and could not be fitted properly to Plaintiff in the circumstances and under the conditions in which Plaintiff used the respirators;

(f)     knew, or with the exercise of reasonable care, should have known that 3M's respirators were ineffective in repelling silica dust and that when Plaintiff used 3M's respirators in a manner which 3M intended for the product to be used, Plaintiff was still exposed to dangerous silica particles;

(g)     knew, or with the exercise of reasonable care should have known, that 3M's respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust.

29.     3M's aforestated conduct was done with conscious disregard for the safety of Plaintiff Carl Scaggs and others, justifying an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant under this Count:

(a)     in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

(b)     costs of suit;

(c)     pre-judgment and post judgment interest;

(d)     punitive damages in a fair and reasonable amount in excess of $20,000,000 to punish and deter Defendant and others from engaging in similar wrongful conduct; and

(d)     such other and further relief as this Court deems just and proper.

## COUNT II
## PRODUCT LIABILITY – MINE SAFETY APPLIANCES

Comes now Plaintiff, Carl Scaggs, and for Count I of his Complaint against Defendant alleges:

30.     Plaintiff hereby restates and realleges each and every allegation contained in paragraphs one through twenty and every sub paragraph therein as though they are fully set forth herein.

7

31.     At all material times, Mine Safety Appliances was engaged in the business of manufacturing, distributing, supplying and/or marketing respirators intended to protect users of those respirators, including Plaintiff, from silica dust.

32.     Mine Safety Appliances' respirators were used by Plaintiff in order to protect Plaintiff from inhalation of silica dust.

33.     Mine Safety Appliances respirators failed to protect Plaintiff from inhaling silica dust thereby directly causing or contributing to cause Plaintiff damage in that he contracted silicosis through the inhalation of respirable silica.

34.     The Mine Safety Appliances respirators were in a defective condition and unreasonably dangerous for use in the expectable environment of use of said respirators when placed in the stream of commerce by Mine Safety Appliances.  Said defective, unreasonably dangerous condition caused or was a contributing cause of the injuries and damages which are the basis of this suit.

35.     Mine Safety Appliances is liable to Plaintiff because as designer, manufacturer, distributor, and/or seller of its products in a defective, unreasonably dangerous condition, Mine Safety Appliances owed Plaintiff a strict duty not to cause harm through the use of 3M's defective and unreasonably dangerous products.

36.     Further, Mine Safety Appliances sold and placed in the stream of commerce defective and unreasonably dangerous respirators which were not safe for their reasonably anticipated use when Mine Safety Appliances:

> (a)     knew, or with the exercise of reasonable care should have known, that its respirators would not protect against silica dust, and, therefore, the respirators were in a defective, unreasonably dangerous condition;

(b)     failed to warn and/or adequately warn Plaintiff of such dangers that were posed by Mine Safety Appliances' defective and unreasonably dangerous respirators;

(c)     knew or it was reasonably foreseeable, that Mine Safety Appliances' respirators would be used by users or consumers such as Plaintiff, in the manner in which 3M's respirators were used by Plaintiff;

(d)     failed to instruct Plaintiff in the proper use of  Mine Safety Appliances' respirators to protect Plaintiff from harm, if, in truth, there was a way that the Mine Safety Appliances respirators could protect Plaintiff from such harm;

(e)     knew, or with the exercise of reasonable care should have known, that Mine Safety Appliances' respirators were designed in a manner where the respirators did not properly fit and could not be fitted properly to Plaintiff in the circumstances and under the conditions in which Plaintiff used the respirators;

(f)     knew, or with the exercise of reasonable care, should have known that Mine Safety Appliances' respirators were ineffective in repelling silica dust and that when Plaintiff used Mine Safety Appliances' respirators in a manner which Mine Safety Appliances intended for the product to be used, Plaintiff was still exposed to dangerous silica particles;

(g)     knew, or with the exercise of reasonable care should have known, that Mine Safety Appliances' respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust.

37.     Mine Safety Appliances' aforestated conduct was done with conscious disregard for the safety of Plaintiff Carl Scaggs and others, justifying an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant under this Count:

(a)     in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

(b)     costs of suit;

(c)     pre-judgment and post judgment interest;

(d)     punitive damages in a fair and reasonable amount in excess of $20,000,000 to punish and deter Defendant and others from engaging in similar wrongful conduct; and

(e)     such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF WARRANTY – 3M COMPANY

38.     Comes now Plaintiff, Carl Scaggs, and for Count II of his Complaint against Defendant alleges:

39.     Plaintiff hereby restates and realleges each and every allegation contained in paragraphs one through twenty eight and every sub paragraph therein as though they are fully set forth herein.

40.     At all material times, 3M was a merchant who sold respirators and as such, 3M impliedly warranted that said respirators were fit for a particular purpose, would be safe and not unreasonably dangerous for use by the general public, and 3M also warranted that said respirators would be merchantable.  At all material times 3M expressly warranted with respect to the 3M respirators used by Plaintiff during the term of his employment aforesaid, that "one size fits all faces", "one size fits most faces", and that the 3M 8710 and 8517.  NIOSH certified respirators that were approved to be used in a silica environment and could protect the user in a silica environment, and 3M Company breached its express warranty aforesaid because each of these respirators were dangerous and unsafe for the users thereof in a silica environment, including Plaintiff.  3M breached its implied warranty of fitness for a particular purpose aforesaid and of merchantability aforesaid and said breaches caused or were the contributing causes of Plaintiff's silica related occupational lung disease.

41.     3M knew or should have known that its respirators would be purchased and used in environments containing silica dust particles.  Further, 3M knew or should have known that its respirators would be purchased and used as a means of protecting Plaintiff from inhaling silica dust particles.

42.     Plaintiff reasonably relied on 3M's judgment that the respirators were fit for use in Plaintiff's work environment.

43.     3M's respirators were not fit for use in Plaintiff's work environment because the respirators failed to protect Plaintiff from inhaling silica dust.

44.     As a direct result of 3M's respirators being unfit for use in Plaintiff's work environment, Plaintiff was damaged in that he suffers from a silica related occupational lung disease.

WHEREFORE, Plaintiff prays for judgment against Defendant under this Count:

(a)     in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

(b)     costs of suit;

(c)     pre-judgment and post judgment interest;

(d)     such other and further relief as this Court deems just and proper.

### COUNT IV
### BREACH OF WARRANTY – MINE SAFETY APPLIANCES

45.     Comes now Plaintiff, Carl Scaggs, and for Count III of his Complaint against Defendant alleges:

46.     Plaintiff hereby restates and realleges each and every allegation contained in paragraphs one through twenty eight and every sub paragraph therein as though they are fully set forth herein.

47.     At all material times, Mine Safety Appliances was a merchant who sold respirators and as such, Mine Safety Appliances impliedly warranted that said respirators were fit for a particular purpose, would be safe and not unreasonably dangerous for use by the general public, and 3M also warranted that said respirators would be merchantable.  At all material times Mine Safety Appliances expressly warranted with respect to the Dustfoe respirators used by Plaintiff during the term of his employment aforesaid, that these respirators would provide proper filtration of silica dust and Mine Safety Appliances Company breached its express warranty aforesaid because each of these respirators were dangerous and unsafe for the users thereof in a silica environment, including Plaintiff.  Mine Safety Appliances breached its implied warranty of fitness for a particular purpose aforesaid and of merchantability aforesaid and said breaches caused or were the contributing causes of Plaintiff's silica dust induced airway obstruction.

48.     Mine Safety Appliances knew or should have known that its respirators would be purchased and used in environments containing silica dust particles.  Further, Mine Safety Appliances knew or should have known that its respirators would be purchased and used as a means of protecting Plaintiff from inhaling silica dust particles.

49.     Plaintiff reasonably relied on Mine Safety Appliances judgment that the respirators were fit for use in Plaintiff's work environment.

50.     Mine Safety Appliances respirators were not fit for use in Plaintiff's work environment because the respirators failed to protect Plaintiff from inhaling silica dust.

51.     As a direct result of Mine Safety Appliances respirators respirators being unfit for use in Plaintiff's work environment, Plaintiff was damaged in that he suffers from a silica related occupational lung disease.

WHEREFORE, Plaintiff prays for judgment against Defendant under this Count:

(a)     in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

(b)     costs of suit;

(c)     pre-judgment and post judgment interest;

(d)     such other and further relief as this Court deems just and proper.

**COUNT V**
**NEGLIGENCE – 3M COMPANY**

52.     Comes now Plaintiff, Carl Scaggs, and for Count III of his Complaint against Defendant alleges as follows:

53.     Plaintiff hereby restates and realleges each and every allegation contained in paragraphs one through thirty four and every sub paragraph therein as though they are fully set forth herein.

54.     3M knew, or in the exercise of ordinary care, should have known of unreasonable risks of harm posed by use of its respirators.

55.     Despite its actual or constructive knowledge that its respirators pose an unreasonable risk of harm, 3M:

(a)     failed to provide adequate warning and/or instruction with regard to the respirators;

(b)     failed to provide proper fitting instructions;

(c)     either ignored the results of filtering and quality control tests performed by 3M and others, or
failed to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

(d)     failed to properly design their respirators;

(e)     failed to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with its respirators;

13

(f)     failed to accompany its respirators with adequate warnings of their dangerous propensities;

(g)     knew, or with the exercise of reasonable care, should have known that 3M's respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust;

(h)     failed to implement or enforce a valid quality control program to insure that 3M respirators were manufactured in compliance with federal certification regulations;

(i)     failed to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

56.     The acts and/or omissions by 3M directly caused or directly contributed to cause Plaintiff's silica dust induced occupational lung disease damages as set forth herein.

57.     3M's aforestated conduct was done with conscious disregard for the safety of Plaintiff and others, justifying an award of punitive damages.

<u>**COUNT VI**</u>
<u>**NEGLIGENCE – MINE SAFETY APPLIANCES**</u>

58.     Comes now Plaintiff, Carl Scaggs, and for Count III of his Complaint against Defendant alleges as follows:

59.     Plaintiff hereby restates and realleges each and every allegation contained in paragraphs one through thirty four and every sub paragraph therein as though they are fully set forth herein.

60.     Mine Safety Appliances knew, or in the exercise of ordinary care, should have known of unreasonable risks of harm posed by use of its respirators.

61.     Despite its actual or constructive knowledge that its Dustfoe respirator posed an unreasonable risk of harm, Mine Safety Appliances:

(a)     failed to provide adequate warning and/or instruction with regard to the respirators;

(b)     failed to provide proper fitting instructions;

(c)     either ignored the results of filtering and quality control tests performed by Mine Safety Appliances and the Los Alamos Scientific Laboratory, or failed to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

(d)     failed to properly design their respirators;

(e)     failed to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with its respirators;

(f)     failed to accompany its respirators with adequate warnings of their dangerous propensities;

(g)     knew, or with the exercise of reasonable care, should have known that Mine Safety Appliance Dustfoe respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust;

(h)     failed to implement or enforce a valid quality control program to insure that Mine Safety Appliance Dustfoe respirators were manufactured in compliance with federal certification regulations;

(i)     failed to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

62.     The acts and/or omissions by Mine Safety Appliances directly caused or directly contributed to cause Plaintiff's silica related occupational lung disease damages as set forth herein.

## COUNT VII
## MISREPRESENTATION 402B – 3M COMPANY

63.     The evidence will further show that 3M misrepresented to the workers at the ISP

plant where Plaintiff was employed that the 3M 8710 and the 3M 8715 had certain performance

capabilities which it did not.   3M represented that the 3M 8710 was a NIOSH approved

respirator when it was not, because the 3M8710/8715 was failing internal quality control tests.

3M requested that the 3M 8710 could be used in work areas with silica dust concentrations when

it could not, in fact, protect workers from silica.   3M represented that the 3M 8710 and 8715

would filter out silica particles and protect the user when, in fact, it could not.   These

misrepresentations were a producing cause of the Plaintiff's injures and damages.   The Plaintiff,

and/or his employer, relied upon the representations made by the Defendant 3M in purchasing

the 3M 8710.   This reliance caused Plaintiff to utilize the 3M 8710/8715 when they would not

otherwise have used this respirator and proximately caused Plaintiff's injuries and damages.

## COUNT VIII
## FRAUD – 3M COMPANY

64.     The evidence will show further that from 3M knowingly made representations

that the 3M 8710 was approved by the National Institute for Occupational Safety and Health

("NIOSH") and met the approval requirements pursuant to the statutory requirements embodied

30 C.F.R. Part 11 of Federal Regulations.   The evidence will show that despite making these

representations and including such representations on all packaging and marketing literature, the

evidence will show that this representation was untrue.   The evidence will further show that the

3M 8710 failed to meet NIOSH certification requirements and specifications.   The respirator was

sold to the public with full knowledge by 3M that the respirator could not and did not meet the

NIOSH approval regulations.  Such conduct constituted false representations and concealments with the intent to induce Plaintiff's employer into purchasing the 3M 8710.

65.     The evidence will also show that the representations set forth in the preceding paragraphs concerned material facts.  The reason that the Plaintiff's employer would not have endeavored to purchase the 3M 8710 if the Plaintiff's employer had known that the mask did not meet or exceed government certification requirements.  This representation was relied upon by Plaintiff's employer resulting in substantial injuries and damages to Plaintiff.  In this connection, Plaintiff further alleges that the Defendant 3M purported to have and did have superior knowledge concerning the subject matter of the transaction described above, and Plaintiff and his employer justifiably relied on Defendant's superior knowledge.  The above foregoing action taken by 3M constitute fraud which proximately caused Plaintiff's injuries and damages

66.     3M's aforestated conduct done with conscious disregard for the safety of Plaintiff and others, justifying an award of punitive damages.

<u>**COUNT IX**</u>
<u>**EXEMPLARY/PUNITIVE DAMAGES – 3M COMPANY**</u>

67.     In performing the acts described as follows above the Defendants acted maliciously, willfully, intentionally, recklessly and in wanton and willful disregard of Plaintiff's safety.  Accordingly, Plaintiff is entitled to punitive and/or exemplary damages.

68.     The evidence will show that the 3M 8710 and the 3M 8715 were never designed nor capable of meeting the legal requirements for use for use around any operation where workers were exposed to pneumoconiosis producing dusts.   More specifically, these respirators/dust masks were never capable of complying with the requirements of the Occupational Safety Health Act C.F.R. 1910.134(e)(5) because a face-piece-to-face fit was impossible to perform on this design of respirator/dust mask.  Despite the fact that this face-

piece-to-face fit check was required pursuant to the aforementioned regulation from at least 1972 to 1998, the Defendants sold and marketed these respirators/dust masks knowing that these respirators/dust masks could not comply with the fit check and fit test requirements under 29 C.F.R. 1910.134(e)(5).  Knowing that these respirators/dust masks could not comply with the OSHA regulations, these Defendants intentionally and knowingly refused to inform purchasers of this equipment that the respirators/dust masks could not comply with 29 CF.R. 1910.134(e)(5).  These Defendants refused to inform purchasers that the American National Standards Institute, a national consensus organization of manufacturers and safety experts, had declared that testing the fit of these type of respirators/dust masks to the fact with a proper face seal was "impossible" to perform.  Despite the conclusions from this well respected and nationally recognized organization which the Defendant also belonged, the Defendant continued to sell these respirators/dust masks knowing that they could not be tested for fit and they could not comply with federal law.  Furthermore, while persons like your Plaintiff was using the 3M 8710, Federal regulations also required that a fit test be periodically performed on the respirator to determine proper fit.  This fit test required that the mask be tested in a test atmosphere.  However, no such suitable test agent was available for the 3M 8710 therefore making it impossible for employers to comply with the fit test requirement required by 29 C.F.R. § 1910.134(e)(5).

69.    Such inability to test the fit of these disposable respirators/dust masks pursuant to the requirements of 29 C.F.R. § 1910.134 (e)(5) made these products unreasonably dangerous yet these Defendants continued to sell these products knowing that they created an unreasonable danger and could not comply with the requirements of this regulation.  This failure to disclose was intentional and willful and carried out by vice principals of these Defendants responsible for

the sale and design of these respirators/dust masks because disclosure of such information would have resulted in the inability to sell respirators/dust masks to the public for the use which they were intended.  Therefore, the Defendants knowingly, intentionally and willfully continued to sell these respirators/dust masks in their dangerous condition knowing that they were unreasonably dangerous and unsafe.  They continued to do so with ill will in order to continue the sale of these products and preserve their market share of these products, which they otherwise would have been unable to sell.  Such conduct warrants the imposition of punitive and/or exemplary damages pursuant to Missouri law.

70.     Pleading further as to the propriety of exemplary and/or punitive damages in this case, the evidence will show that 3M Company manufactured the 3M 8710 and/or 3M 8715.  The evidence will show that the 3M 8710 and/or 3M 8715 did not meet the federal regulatory requirements for certification for use around this type of dust pursuant to 30 C.F.R. § 11.140-5 (1972-98).  The evidence will show that 3M's own internal testing revealed that in any given year of Plaintiff's use, approximately 90 to 100% of the masks it sold to the consuming public failed to comply with this certification testing provision or that in any given year 3M failed to properly perform quality control testing.   Consequently, 3M violated the quality control requirements of 30 C.F.R. § 11.41 and § 11.43 because the defects revealed by 3M's own certification testing were classified as Major A defects, which are defects defined by regulation that are "likely to result in failure to the degree that the respirator does not provide any respiratory protection or a defect that reduces protection and is not detectable by the user."  30 C.F.R. § 11.41 (d)(2) (1972-98).  Furthermore, 3M was advised by NIOSH through written correspondence in April 1975 that these Major A defects existed as a result of an independent audit of 3M masks undertaken by NIOSH.  Despite being placed on notice by NIOSH of these

defects and despite having actual knowledge of these defects by virtue of 3M's own internal quality control testing, 3M continued to sell the 3M 8710 and 3M 8715.  Consequently, 3M violated federal regulations by failing to follow the quality control requirements under 30 C.F.R. § 11.41 (d)(2) and § 11.42 (c) which required 3M to remove its NIOSH certification if it could not comply with the NIOSH certification requirements.  3M therefore deliberately, intentionally and willfully mislead the potential purchasers of these masks and the ultimate users of this mask, such as the Plaintiff, by:

    (a)    failing to comply with NIOSH directives to improve quality control of the masks to prevent failures;

    (b)    selling masks which 3M knew could not and did not comply with federal certification regulation;

    (c)    refusing to inform the purchasers and users of these masks that the 3M 8710 and/or 3M 8715 was/were incapable of meeting federal certification requirements;

    (d)    refusing to redesign the mask to meet federal regulatory requirements; and

    (e)    fraudulently representing that the 3M 8710 and/or 3M 8715 complied with federal certification requirements when it/they did not.

71.   These acts, both individually and collectively, illustrate a deliberate, willful and conscious disregard for Plaintiff's safety and the safety of others.  These acts by 3M constitute reckless conduct that would intentionally harm others.  This Defendant, through its vide principals, acted with such conscious disregard in order to preserve its market share regarding the sale of these respirators/dust masks which would have otherwise been extinguished had 3M disclosed its certification problems to the consuming public.  Therefore 3M is responsible for exemplary and/or punitive damages pursuant to Missouri law.

WHEREFORE, Plaintiff prays for judgment against Defendant under this Count:

    (a)    in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

    (b)    costs of suit;

    (c)    pre-judgment and post judgment interest;

(d)     punitive damages in a fair and reasonable amount in excess of $20,000,000 to punish and deter Defendant and others from engaging in similar wrongful conduct; and

(e)     such other and further relief as this Court deems just and proper.

### COUNT X
### LOSS OF CONSORTIUM

72.     Comes now Plaintiff, Nellie Scaggs, and for her cause of action in Count IV against Defendant alleges as follows:

73.     Plaintiff, Nellie Scaggs, hereby restates and realleges each and every allegation contained in paragraphs one through thirty nine and every sub paragraph therein as though they are fully set forth herein.

74.     Plaintiff, Nellie Scaggs, is now and at all times hereinafter mentioned was a resident and citizen of the State of Missouri.

75.     At all times relevant herein, Plaintiff, Nellie Scaggs, was the wife of Plaintiff, Carl Scaggs, both were legally married to each other at the time of the occurrences herein, and Nellie Scaggs was entitled thereby to care, comfort, support, companionship, consortium and services of Carl Scaggs.

76.     Because of the defective product, breaches of warranty and negligent conduct of Defendant, 3M Company, as aforementioned, and the injuries and damages to Plaintiff Carl Scaggs, as aforementioned, Plaintiff, Nellie Scaggs, has been caused to suffer and continues to suffer the loss of society, consortium, companionship, love, affection, support, and care of her spouse, Plaintiff, Carl Scaggs.

### XI

77.     The evidence will further show that Plaintiff's occupational lung disease has a latency period and does not arise after first exposure to post but many years later.  Consequently,

21

the discovery rule applies and limitations is tolled until Plaintiff knew or in the exercise of reasonable diligence, should have known of his lung disease.  Plaintiff was not diagnosed with a silica related lung disease until November 20, 2003, therefore under Missouri law, limitations is tolled until November 20, 2008.

WHEREFORE, Plaintiffs, Carl Scaggs and Nellie Scaggs, pray for judgment against Defendants under this Count:

(a)     in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

(b)     costs of suit;

(c)     pre-judgment and post judgment interest;

(d)     such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**PAGE CAGLE**

**By: \s\ Zane T. Cagle**
John J. Page; MO #53239, Fed. #109821
**Zane Cagle; MO #53775, Fed. #499604**
1232 Washington Ave., Ste. 220
St. Louis, Missouri  63103
T:  (314) 241-4555
F:  (314) 241-4556
E-Mail:  zane@pagecagle.com

*ATTORNEYS FOR PLAINTIFFS*