UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARL SCAGGS and NELLIE SCAGGS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> 3M COMPANY, AS SUCCESSOR BY ) <br> MERGER TO MINNESOTA MINING & ) <br> MANUFACTURING COMPANY AND/OR ) <br> ITS PREDECESSORS/SUCCESSORS IN ) <br> INTEREST ) <br> and ) <br> MINE SAFETY APPLIANCES, ) <br> ) <br> Defendants. ) | Cause No. 4:08-CV-01163 ERW <br> **JURY TRIAL DEMANDED** |

### MSA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED UPON NEGLIGENCE *PER SE*

Defendant Mine Safety Appliances Company ("MSA") files this opposition to Plaintiffs' Motion for Partial Summary Judgment Based Upon Negligence *Per Se* ("Plaintiffs' Motion") because the evidence will show that MSA complied with all regulatory requirements. MSA's respiratory protection products would have been effective in protecting Plaintiff Carl Scaggs, for the short period of time that he may have allegedly used them, if he used them properly in accordance with instructions and regulatory limitations. Plaintiffs have failed to show that they are entitled to a jury instruction on negligence *per se* and accordingly their motion must be denied.

I. INTRODUCTION

The MSA Dustfoe 66 is an air purifying respirator that was initially certified and approved by the United States Bureau of Mines under 30 C.F.R. Part 14 (1955) ("Schedule 21A") on October 25, 1955. (SOF ¶1)  The Dustfoe 66 was subsequently approved under 30

C.F.R. Part 14 ("Schedule 21B") on October 15, 1970 and by the National Institute for Occupational Safety and Health (NIOSH) under 30 C.F.R. Part 11 on February 21, 1975. (SOF ¶¶4,6) MSA received numerous extensions of approval over this time span as it continually updated its product in accordance with the state of the art. As the regulatory standards changed over time, the Dustfoe 66 maintained continuous approval under relevant regulatory schedules – at no time was any certification revoked. (SOF ¶8)

Plaintiff Carl Scaggs was employed by ISP Minerals (ISP) for 38 years, from 1966 to 2004, where he was continuously exposed to silica dust. (*See* Complaint, Doc. #1, at ¶¶12-13). Mr. Scaggs testified in his deposition that he wore the MSA Dustfoe 66 for five (5) to seven (7) years when he first started working before ISP switched to 3M brand disposable masks – the 8710 and 8715 (SOF ¶9). During the years in which Mr. Scaggs allegedly wore the Dustfoe 66, the respirator maintained government certification and approval for protection against pneumoconiosis producing dust. The evidence at trial will show that this respirator was effective and would have provided Mr. Scaggs protection against silica dust for the short period of time that he allegedly used it, as long as he wore it in accordance with the regulatory limitations and proper training. However, the evidence will also show that during the time in which Mr. Scaggs alleges to have worn the Dustfoe 66, he had a history of failing to comply with the safety and work rules and regulations at ISP. (SOF ¶9)

Furthermore, records from Mr. Scaggs' visits to several pulmonologists suggest that Mr. Scaggs did not even wear respiratory protection during the years in which he now alleges to have worn the Dustfoe 66. In 2008, Mr. Scaggs reported to Dr. Joseph M. Ojile that he did not wear any respiratory protection prior to the mid-1970s, at which time he started wearing disposable, filter-less masks- not cartridge-type masks. (SOF ¶9) A 2004 independent medical evaluation

report regarding Mr. Scaggs prepared by Dr. Robert Bruce notes: "In the early years of his employment, masks were not typically worn by any of the workers," thus putting in doubt whether Mr. Scaggs ever wore the Dustfoe 66 at all. (SOF ¶9)

Ultimately, Plaintiffs' argument that they are entitled to a jury instruction on negligence *per se* fails on several grounds, the most important being that MSA did not violate any statutory requirements. On the contrary, MSA's respiratory protection complied with all government standards and maintained consistent government approval and certification. (SOF ¶8) The Bureau of Mines and NIOSH had the authority to revoke any certification and order a recall if in fact it felt that the product was either unsafe or in violation of regulatory standards, but it never did so. (SOF ¶¶2,5,7,8) MSA and the government agencies engaged in negotiations relating to product upgrades over time, allowing MSA to continually develop its products in line with the state of the art and consistently achieve new certifications, approvals, and extensions of approvals. As Plaintiffs implicitly recognize, a claim for negligence *per se* would further fail for lack of proximate cause. The Dustfoe 66 approved under Schedule 21A was sufficient to provide protection to Mr. Scaggs during the time which he may have allegedly used it. The only argument that Plaintiffs can offer is that there was a *potential* that the respirator did not provide complete protection, and that Mr. Scaggs was not given the opportunity by his employer to wear the version approved under a different standard; however, this is insufficient to establish proximate cause as for the majority of his career, he wore different masks, the 3M 8710 and 8715, that Plaintiffs also allege were defective. (*See* Complaint, Doc. #1) Plaintiffs cannot claim or establish that the lack of choice between regulatory standards caused or contributed to any illness. Finally, Plaintiffs' Motion fails for the basic reason that they did not even allege negligence *per se* in their Complaint. (*See* Doc. #1)

## II. ARGUMENT

### A. Standard for Summary Judgment

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir. 1996). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 634 (8th Cir. 1995). In considering a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party, and give the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. *Donaho*, 74 F.3d at 897-98.

### B. The MSA Dustfoe 66 complied with regulatory standards, and therefore Plaintiffs' Motion must be denied

To properly bring a negligence *per se* claim before the Court, the plaintiff must actually plead it. The Plaintiffs in this case failed to do so. The plaintiff must then allege and establish a violation of a statute. *Sill v. Burlington Northern Railroad*, 87 S.W.3d 386, 392 (Mo.App. S.D. 2002). "Negligence *per se* arises when the legislature pronounces in a statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct, and the court then adopts the statutory standard of care to define the standard of conduct of a reasonable person." *Burns v. Frontier II Props. Ltd. P'Ship*, 106 S.W.3d 1, 3 (Mo.App.E.D. 2003). The Plaintiffs in this case have failed this element as well, as they cannot establish the violation of any statute, but merely attempt to improperly invoke the doctrine of negligence *per se* for what they allege was a *delay* in obtaining certification even though there was no statutory time limit for obtaining certification. In fact, MSA's Dustfoe 66 respirator was certified and approved by the relevant government agency for the entire time period at issue in this action.

A negligence *per se* claim fails without evidence of a violation of precise statutory requirements. In *In re Genetically Modified Rice Litigation*, the court granted a motion for summary judgment against plaintiffs' negligence *per se* claim, noting that "although the regulations are not ambiguous, they are not sufficiently precise about what a person must do to comply.... They do not dictate the method of reaching [the] result, and so they do not provide a standard of care." 666 F.Supp.2d 1004 (E.D.Mo 2009). As the court explained:

> So, for example, if a building code says that a stair riser must be six inches tall, that is a precise directive that a builder can follow, and if someone is injured because the riser is taller or shorter, negligence *per se* could apply. A building code that says that a stair riser should be of a sufficient height not to be dangerous or so that a person will not fall could not provide a basis for a negligence *per se* claim because the question of what is reasonable was not answered by the building code.

*Id.* at 1022-1023.

Mr. Scaggs was allegedly assigned a Dustfoe 66 approved by the Bureau of Mines under Schedule 21A at or near the time he started working at ISP on September 21, 1966.[1] Although Plaintiffs' Motion alleges that Mr. Scaggs used the Dustfoe 66 until 1982, after the time period that the respirator was certified and approved under Schedule 21B and later under NIOSH 30 C.F.R. Part 11, his employer only offered him the respirator approved under 21A, and then it switched to the 3M disposable masks.[2] Plaintiffs base their argument on the assertion that that Schedule 21B, effective January 21, 1965, was "intended to replace the Bureau's predecessor regulation Schedule 21A," and argue that MSA should somehow be held responsible for Mr. Scaggs' employer's decision to provide him with a respirator that held a government approval under the previous standard. However, there is simply no language in Schedule 21B to support

---

[1] The Bureau of Mines assigned the Dustfoe 66 approved under Schedule 21A "Approval No. 2166." (SOF ¶1)
[2] Though Plaintiffs' Motion alleges that Mr. Scaggs wore the Dustfoe 66 until 1982, Mr. Scaggs testified that he used the MSA Dustfoe 66 for five (5) to seven (7) years after he started at ISP in 1966, or, in other words, until the early 1970s (1971 or 1973). At that point, ISP switched to using the 3M 8710 respirator and the MSA Dustfoe was never used again. (SOF ¶9)

this argument. (*See* Schedule 21B, attached as Exhibit 4 & 5 to Plaintiffs' Motion) Schedule 21B does not contain a deadline for certification, nor does it invalidate approvals granted under Schedule 21A. *Id.*

In fact, even *after* the Dustfoe 66 received approval under Schedule 21B ("Approval No. 21-113"), the Bureau of Mines continued to grant extensions of approval relating to the 21A Dustfoe 66. (SOF ¶¶3,4) On February 21, 1971, the Bureau of Mines granted Extension of Approvals relating to alternate filters for use in both the 21A ("Approval 2166") and 21B ("Approval 21B-113") Dustfoe 66s. (SOF ¶3) The Bureau of Mines practice of extending Schedule 21A approvals more than six years after the adoption of Schedule 21B clearly shows that the Bureau of Mines did not intend for Schedule 21B to have the effect of making all respirators approved under Schedule 21A "non-approved" or obsolete. Contrary to Plaintiffs' unsupported argument, the evidence establishes that MSA complied with regulatory standards.

As Plaintiffs did not properly allege a negligence *per se* claim and furthermore cannot prove that MSA violated any statute or regulation, which is the essential element to their negligence *per se* claim, their Motion for Partial Summary Judgment must be denied.[3]

### C. It was the duty of ISP to select appropriate respiratory protection worn by Mr. Scaggs

The Dustfoe 66 was certified and approved by relevant government agencies during the entire time at issue in this action. Plaintiffs nevertheless allege that MSA somehow "caused" ISP to violate the Missouri law requiring employees to be provided with "adequate and approved

---

[3] Federal courts will deny a plaintiff's motion for summary judgment on a claim that was not pled in the complaint. *See e.g., Stevenson v. Best Buy Corp.*, 2005 WL 3434770 (E.D. Mo. 2005) (where plaintiff sought summary judgment for workers' compensation retaliation, the Court found that because the claim was not included in the Second Amended Complaint, the claim for retaliation was not properly before the Court for summary judgment); *see also, In re Arrow Speed Warehouse, Inc.*, 2009 WL 3109911, 5 (Bkrtcy. W.D. Mo. 2009) (where plaintiff-debtor filed summary judgment seeking to recover, *inter alia*, finance charges from the defendant on a basis of recovery not pled in its complaint, the court held, "The Court cannot and will not grant [the plaintiff] summary judgment on a claim it did not plead in its complaint.")

respirators" by allegedly providing Mr. Scaggs with a respirator approved under Schedule 21A, as opposed to a respirator approved under Schedule 21B. RSMo. §292.320 (2010) previously RSMo. 1929 § 13254 (1929). As noted above, there is a significant fact question as to whether ISP provided ANY respiratory protection to Mr. Scaggs prior to the 3M disposable masks in the mid-1970s, or whether he actually wore the Dustfoe 66 if it was available. Despite this factual issue, the duty of choosing the respiratory protection to provide to its employees and complying with state laws regarding the same belonged to ISP.

MSA offered a full line of certified and approved respiratory protection to enable employers to comply with their obligation to provide employees with "adequate and approved respirators;" however, the employer's obligation goes much further than simply checking for an approval label. An employer must identify the hazards involved in its work place, including doing appropriate air sampling to determine contaminants and concentrations. The employer is then required to utilize engineering and administrative controls to eliminate or reduce exposures below the established threshold limit values. Respiratory protection is only a last resort, to be used for temporary exposures or in the interim until engineering controls can be implemented. The respiratory protection should be selected on the basis of the environment and concentration and used in accordance with a written respiratory protection plan covering training, fit testing, usage, and maintenance. It is also an important employer function to enforce its respiratory program – a relevant issue with Mr. Scaggs who had numerous safety and work rule violations. There is no legal basis to ignore the extensive employer responsibilities relating to providing a safe workplace environment to impose responsibility onto MSA simply because ISP chose one approved device instead of another approved device. The Dustfoe 66 was approved under both

Schedule 21A and 21B, and never lost its certification; accordingly, any violation of its obligations under Missouri law was within ISP's own responsibility under the law.

### D. MSA had no duty recall or retrofit either the 21A or 21B Dustfoe 66

As previously discussed, the 21A Dustfoe was approved by the Bureau of Mines when it was provided to Mr. Scaggs, and the choice of respiratory protection for its employees rested with Mr. Scaggs' employer, ISP. Plaintiffs admit that while MSA did get 21B approval for the Dustfoe 66, ISP chose not to provide this version to its employees. In spite of this, the bulk of Plaintiffs' argument relies on supposed faults with the 21B Dustfoe and asserts that MSA had a duty to order a stop sale or notify employers of these supposed faults. While MSA notes that these allegations have no bearing on the instant case, as Plaintiffs freely admit that *Mr. Scaggs never wore the 21B Dustfoe*, MSA will nevertheless address these allegations.

The Missouri Supreme Court has not recognized any post-sale duty to warn, duty to recall, or duty to retrofit. The Eighth Circuit, applying Missouri law, has held that whether a duty to recall exists is a matter of law that must be supported by statute, case law, or the mandate of the appropriate government agency. *Smith v. Firestone Tire & Rubber Company*, 755 F.2d 129, 135 (8th Cir. 1985); *Horstymer v. Black & Decker*, 151 F.3d 765, 773 (8th Cir. 1998).

In *Smith*, Mr. Smith was injured by a multi-piece truck tire rim manufactured by Firestone. 755 F.2d at 134. The district court refused to allow plaintiffs to add a failure to recall element in their proposed jury instruction. *Id.* On appeal, the court noted that plaintiffs provided no statute or case law to support their position that Firestone was under a legal duty to recall the rims. *Id.* at 135. The court noted that such a duty *may* have existed had the Department of Transportation ordered a recall; however, no recall was ordered. *Id.* Similarly, in *Horstymer* the

court refused to impose a common law duty to recall even where the defendant had voluntarily undertaken to recall certain of its products. 151 F.3d at 774.

In *Efting v. Tokai Corporation*, plaintiffs brought a wrongful death claim against Tokai, the manufacturer of the "Aim N Flame" lighter which plaintiffs claimed caused a child's death. 75 F.Supp.2d 1006, 1007-1008 (W.D. Mo. 1999). Plaintiffs asserted a claim for "negligence and strict liability for failure to recall or retrofit," and presented facts showing that Tokai had notice of several defects in the Aim N Flame prior to 1996, when the child's death occurred. *Id.* at 1010-1011. The Aim N Flame had never been subject to a recall. *Id.* at 1011. The court held that Tokai did not have a duty to recall or retrofit the Aim N Flame, noting that even "a showing that the defendant had notice of a defect is not enough in itself to create this common law duty." *Id.*

In *Stanger v. Smith & Nephew, Inc.*, the Stangers brought a products liability action against defendants for injuries caused by a defective tibial insert implanted in Ms. Stanger. 401 F.Supp.2d 974, 976 (E.D.Mo 2005). The insert was manufactured and packaged in 1991, but not implanted into Ms. Stanger until 2002. *Id.* In 1991, the insert was sterilized using gamma irradiation, the standard industry practice at that time. *Id.* However, by 1996, information was available that this form of sterilization makes tibial inserts unsuitable for implantation approximately five years after sterilization. *Id.* at 976-977. Nevertheless, the court held that absent a mandated recall by a governmental agency, defendants had no duty to recall the tibial insert, as there is no cause of action for negligent failure to recall under Missouri law. *Id.* at 982.

Confusingly, Plaintiffs are apparently arguing that MSA should have recalled the 21A version of the Dustfoe 66 because it was not certified under Schedule 21B, and also that MSA should have recalled the 21B version of the Dustfoe 66 because it did not have an exhalation

valve cover. As discussed above, these arguments are without merit because the 21A certification was effective even after Schedule 21B was enacted and the Dustfoe 66 never lost its certification. Furthermore, the Dustfoe 66 was certified under Schedule 21B, which had no requirement for an exhalation valve cover (SOF ¶12). The Bureau of Mines never ordered a recall of the Dustfoe 66 approved under either Schedule 21A or 21B, even though it had the authority to do so if it felt the respirator was unsafe or in violation of the standards (SOF ¶¶-2,5,8). Accordingly, there was no issue requiring or justifying a recall. This is further enforced by established Missouri case law discussed above, which does not impose a common law duty to recall or a post sale duty to warn. Therefore, Plaintiffs' Motion must fail.

## III. CONCLUSION

For the reasons set forth herein, Plaintiffs have not and cannot produce sufficient evidence to meet their burden to prove that MSA violated any statute or regulation, and therefore Plaintiffs' Motion for Partial Summary Judgment Based Upon Negligence *Per Se* must be denied.

Respectfully submitted,

/s/ W. Jeffrey Muskopf
W. Jeffrey Muskopf - #71431
Michael J. Smith - #57972
LASHLY & BAER, P.C.
714 Locust Street
St. Louis, Missouri 63101
Telephone: (314) 621-2939
Facsimile: (314) 621-6844
jmuskopf@lashlybaer.com
msmith@lashlybaer.com

ATTORNEYS FOR DEFENDANT MINE
SAFETY APPLIANCES COMPANY

## PROOF OF SERVICE

I hereby certify that on August 20, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

- Zane T. Cagle – zane@pagecagle.com
- John J. Kurowski - jkurowski@cateskurowski.com
- Lawrence R. King – lking@larsonking.com
- Candice Kusmer – ckusmer@kbslf.com
- Michael B. Martin – mbmartin@mmmllp.com
- W. Jeffrey Muskopf – jmuskopf@lashlybaer.com
- Bernadette Weaver-Catalana – bcatalana@osbornreed.com

/s/ W. Jeffrey Muskopf